UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

TED BIRKHOLZ, Personal Representative
of the Estate of HELEN ALTON, *et al.,*

       Plaintiffs,

                                         Case No. 05-73498
v.                                     Hon. Gerald E. Rosen

COUNTY OF MACOMB, *et al.,*

       Defendants.

_____/

## ORDER DENYING PLAINTIFF'S EMERGENCY
## MOTION TO STAY STATE COURT PROCEEDINGS

At a session of said Court, held in
the U.S. Courthouse, Detroit, Michigan
on      September 12, 2006

PRESENT:  Honorable Gerald E. Rosen
                 United States District Judge

By motion filed on July 31, 2006, Plaintiff Cindy Schwartzkopf, the personal representative of the estate of Jacob Schwartzkopf, requests that this Court enjoin a forthcoming proceeding in the state court case of *In re Jacob Schwartzkopf,* Case No. 02-173,919-CA.  Specifically, a trial is scheduled to commence in the Macomb County Probate Court on September 12, 2006, at which the state court will address certain objections filed by Plaintiff to a petition seeking the entry of an order closing the investigation of the Macomb County Department of Senior Citizen Services

("MCDSCS")[1] and releasing any and all claims that the successor conservator of the estate of Jacob Schwartzkopf may have against Macomb County or its agents concerning the handling of estate assets. In support of the present motion, Plaintiff argues that a stay of this state court trial is warranted in order to ensure that her federal constitutional claims are not litigated in the Macomb County Probate Court, thereby extinguishing a purported "constitutional right," (Plaintiff's Motion, Br. in Support at 7), to have these claims addressed in the preferred forum of the federal district court.

The Supreme Court has repeatedly explained, however, that no such right exists. In Allen v. McCurry, 449 U.S. 90, 101 S. Ct. 411 (1980), for example, plaintiff Willie McCurry brought a federal suit under 42 U.S.C. § 1983, alleging that the defendant police officers violated his Fourth Amendment protection against unreasonable searches and seizures. Prior to this federal suit, McCurry had been a defendant in state court criminal proceedings, and had raised essentially the same Fourth Amendment challenge in a pretrial motion to suppress. The state court denied this motion in part, and McCurry subsequently was convicted after a jury trial. In the ensuing federal § 1983 action, the district court held that McCurry was precluded by collateral estoppel principles from relitigating the search-and-seizure issues decided against him in the state court criminal proceedings. The court of appeals reversed this ruling and remanded the case for trial, "invoking the special role of the federal courts in protecting civil rights" and reasoning

_____

[1]The MCDSCS has been named as one of the defendants in the present federal court suit.

2

"that the § 1983 suit was McCurry's only route to a federal forum for his constitutional claim."  Allen, 449 U.S. at 93-94, 101 S. Ct. at 414 (internal quotation marks and citation omitted).

The Supreme Court reversed, holding that the doctrine of collateral estoppel is applicable to § 1983 suits.  In so ruling, the Court stated:

> The actual basis of the Court of Appeals' holding appears to be a generally framed principle that every person asserting a federal right is entitled to one unencumbered opportunity to litigate that right in a federal district court, regardless of the legal posture in which the federal claim arises.  But the authority for this principle is difficult to discern.  It cannot lie in the Constitution, which makes no such guarantee, but leaves the scope of the jurisdiction of the federal district courts to the wisdom of Congress.  And no such authority is to be found in § 1983 itself.  For reasons already discussed at length, nothing in the language or legislative history of § 1983 proves any congressional intent to deny binding effect to a state-court judgment or decision when the state court, acting within its proper jurisdiction, has given the parties a full and fair opportunity to litigate federal claims, and thereby has shown itself willing and able to protect federal rights . . . .  There is, in short, no reason to believe that Congress intended to provide a person claiming a federal right an unrestricted opportunity to relitigate an issue already decided in state court simply because the issue arose in a state proceeding in which he would rather not have been engaged at all.

449 U.S. at 103-04, 101 S. Ct. at 419-20 (footnotes omitted).  The Court further observed that any "general distrust of the capacity of the state courts to render correct decisions on constitutional issues" could not be reconciled with the Court's "emphatic reaffirmation" in an earlier case "of the constitutional obligation of the state courts to uphold federal law, and its expression of confidence in their ability to do so."  449 U.S. at 105, 101 S. Ct. at 420 (citations omitted).

3

The Supreme Court has reiterated these points in two more recent decisions.  First, in Migra v. Warren City School District Board of Education, 465 U.S. 75, 104 S. Ct. 892 (1984), the Court held that the ruling in Allen extended to the doctrine of res judicata (or claim preclusion), and not just collateral estoppel (or issue preclusion).  After finding no apparent basis to distinguish between the issue-preclusive and claim-preclusive effect of state court judgments in § 1983 suits, the Court then rejected one posited benefit to drawing such a distinction:

> Petitioner suggests that to give state-court judgments full issue preclusive effect but not claim preclusive effect would enable litigants to bring their state claims in state court and their federal claims in federal court, thereby taking advantage of the relative expertise of both forums. Although such a division may seem attractive from a plaintiff's perspective, it is not the system established by [the full faith and credit statute, 28 U.S.C.] § 1738.  That statute embodies the view that it is more important to give full faith and credit to state-court judgments than to ensure separate forums for federal and state claims.  This reflects a variety of concerns, including notions of comity, the need to prevent vexatious litigation, and a desire to conserve judicial resources.

Migra, 465 U.S. at 84, 104 S. Ct. at 898.  Thus, the Court reaffirmed that "[s]ection 1983 . . . does not override state preclusion law and guarantee petitioner a right to proceed to judgment in state court on her state claims and then turn to federal court for adjudication of her federal claims."  465 U.S. at 85, 104 S. Ct. at 898.

Most recently, in San Remo Hotel, L.P. v. City of San Francisco, 125 S. Ct. 2491, 2495 (2005), the Court addressed the contention that principles of preclusion should not apply where a plaintiff is compelled to seek adequate compensation in state court before pursuing a Fifth Amendment takings claim in federal court.  In confirming that litigants

4

are bound by the usual preclusion principles in this context, the Court again rejected the

premise "that plaintiffs have a right to vindicate their federal claims in a federal forum:"

> We have repeatedly held, to the contrary, that issues actually decided in valid state-court judgments may well deprive plaintiffs of the "right" to have their federal claims relitigated in federal court. *See, e.g., Migra v. Warren City School Dist. Bd. of Ed.,* 465 U.S. 75, 84, 104 S.Ct. 892, 79 L.Ed.2d 56 (1984); *Allen,* 449 U.S., at 103-104, 101 S.Ct. 411. This is so even when the plaintiff would have preferred not to litigate in state court, but was required to do so by statute or prudential rules. See *id.,* at 104, 101 S.Ct. 411. The relevant question in such cases is not whether the plaintiff has been afforded access to a federal forum; rather, the question is whether the state court actually decided an issue of fact or law that was necessary to its judgment.

> * * * *

> As in *Allen,* we are presently concerned only with issues *actually decided* by the state court that are dispositive of federal claims raised under § 1983. And, also as in *Allen,* it is clear that petitioners would have preferred not to have been forced to have their federal claims resolved by issues decided in state court. Unfortunately for petitioners, it is entirely *unclear* why their preference for a federal forum should matter for constitutional or statutory purposes.

> * * * *

> At base, petitioners' claim amounts to little more than the concern that it is unfair to give preclusive effect to state-court proceedings that are not chosen, but are instead *required* in order to ripen federal takings claims. Whatever the merits of that concern may be, we are not free to disregard the full faith and credit statute solely to preserve the availability of a federal forum.

San Remo Hotel, 125 S. Ct. at 2504-07.

In light of these precedents, Plaintiff cannot plausibly claim that the Court must

enjoin the pending state court proceeding in order to safeguard any purported "right" to

5

have her federal § 1983 claims heard and decided in a federal forum.  As is evident from

Allen, Migra, and San Remo Hotel, if the state court proceeding is permitted to go

forward, the parties will be free to return to this Court at its conclusion and argue that

matters decided in the state court should be given issue- or claim-preclusive effect in this

action.  If this, in turn, results in Plaintiff's federal claims being adversely affected, or

even outright precluded, it is clear from the above-cited decisions that no "right" to a

federal forum would be thereby transgressed.  Thus, while Plaintiff points to various

claimed sources of this Court's general  authority to enjoin a state court proceeding in the

proper circumstances — an authority which, it should be noted, is sharply circumscribed,

see 28 U.S.C. § 2283 (prohibiting a federal court from "grant[ing] an injunction to stay

proceedings in a State court," subject to three limited exceptions); see also Great Earth

Companies, Inc. v. Simons, 288 F.3d 878, 894 (6th Cir. 2002) (noting that the statute's

three enumerated exceptions "are narrow in their application and should not be enlarged

by loose statutory construction" (internal quotation marks and citations omitted)) — she

has failed to identify a recognized ground for exercising this power here.

Moreover, the injunction sought by Plaintiff would be entirely antithetical to the

abstention principles recently invoked by this Court in the companion case of Kawecki v.

County of Macomb, No. 04-70907.  There, as here, the plaintiff alleged that the

Defendant County, the MCDSCS, and certain current and former MCDSCS employees

mismanaged a conservatorship established through the Macomb County Probate Court.

In an April 29, 2005 decision, the Court elected to stay the case pending the outcome of

the related state probate court proceedings in which a court-appointed special fiduciary was investigating similar allegations of mismanagement.  See Kawecki v. County of Macomb, 367 F. Supp.2d 1137 (E.D. Mich. 2005).  This stay was premised principally on the doctrine of Younger abstention.  See Kawecki, 367 F. Supp.2d at 1144-48.

In so ruling, this Court addressed two points that bear directly on the relief sought here.  First, the Court found that the case satisfied the Younger abstention requirement that the parallel state court proceeding must "afford[] the plaintiff an adequate opportunity to raise constitutional claims."  Kawecki, 367 F. Supp.2d at 1144 (quoting Carroll v. City of Mount Clemens, 139 F.3d 1072, 1074 (6th Cir. 1998)).[2]  Plainly, then,

---

[2]Notably, the plaintiff in Kawecki vigorously disputed this point, arguing, albeit without citation to any supporting authority, that the Michigan probate courts lack the authority to address federal constitutional claims.  See Kawecki, 367 F. Supp.2d at 1146.  The plaintiff also denied that she was a party to the state court proceeding, such that she could pursue her interests in that forum.  See Kawecki, 367 F. Supp. at 1144.  Yet, as Defendants point out in their response to the present motion, Plaintiff here — whose claims and allegations are similar to those presented in Kawecki, and who is represented by the very same counsel — now expresses the concern that she will be "forced to litigate Mr. Schwartzkopf's constitutional claims in Macomb Probate Court," with the result that "**the doctrine of *res judicata* will bar those claims from being litigated in the federal court proceedings.**"  (Plaintiff's Motion, Br. in Support at 7 (emphasis in original).)

Under Michigan law, the doctrine of *res judicata* applies only to claims (i) that were actually litigated in a prior suit, or (ii) that arise from the "same transaction" as claims actually litigated and that "the parties, exercising reasonable diligence, could have raised but did not."  Adair v. State of Michigan, 470 Mich. 105, 680 N.W.2d 386, 396 (2004).  Apparently, then, Plaintiff has acknowledged the possibility that her federal claims might be addressed in the probate court proceedings, because the doctrine of *res judicata* otherwise would not prevent these claims from being litigated in this Court.  Similarly, *res judicata* would not be triggered unless Plaintiff was either a party to the state court proceedings or in privity with such a party, see Adair, 680 N.W.2d at 396 — a prerequisite that the plaintiffs here and in Kawecki have previously denied is satisfied.  As Defendants rightly observe, then, there is an inherent tension between Plaintiff's appeal to *res judicata* concerns in her present motion and the contentions previously advanced by the plaintiffs and their counsel in this case and Kawecki.

the Court was aware of the possibility that the state court might well address issues bearing upon the plaintiff's federal § 1983 claims. Indeed, the Court opined that it was likely that "the same factual issues would be litigated in either the state or the federal proceeding," and that the plaintiff possibly "could be made whole for any loss of funds in the state court proceeding." Kawecki, 367 F. Supp.2d at 1147. Yet, despite this evident overlap, and despite the potentially preclusive or mooting effect of the state court litigation, this Court not only did not enjoin the state court proceedings, but *stayed* the *federal court proceedings* to allow these parallel state proceedings to run their course.

Kawecki is not at all unusual in this regard. Rather, in cases where Younger abstention is appropriate, the parallel state proceeding often has a preclusive effect upon the stayed federal suit, or at least tends to streamline the federal claims that remain viable at the conclusion of the state proceeding.[3] In Carroll, 139 F.3d at 1075, for example, the Sixth Circuit observed that the district court in that case likely would "have nothing left to do but clear the case number off of its docket once the state proceedings conclude," because of the potential *res judicata* effects of the various possible outcomes of the state proceeding.[4] More generally, the Sixth Circuit has noted that "in *Younger* abstention

---

[3]Indeed, this is one of the salutary effects of Younger abstention, which is intended in part to "avoid a duplication of legal proceedings and legal sanctions where a single suit would be adequate." Carroll, 139 F.3d at 1075 (internal quotation marks and citation omitted).

[4]Notably, the dissenting judge in Carroll protested that the majority's application of Younger abstention in that case would "deprive the . . . federal court plaintiff of a federal forum in which to litigate her federal constitutional claim," a result that the dissenter viewed as contrary to the Supreme Court's decision in Mitchum v. Foster, 407 U.S. 225, 92 S. Ct. 2151 (1972). Carroll, 139 F.3d at 1078 (Moore, J., concurring in part and dissenting in part). Plaintiff

cases, the parties will almost always be barred by *res judicata* from relitigating in federal court." Bates v. Van Buren Township, 122 Fed. Appx. 803, 809 n.2 (6th Cir. Dec. 6, 2004). The very existence and availability of Younger abstention, then, defeats Plaintiff's contention that it is proper to enjoin a state court proceeding for the sole purpose of avoiding an outcome that might have an issue- or claim-preclusive effect upon a parallel federal suit.

One other point from Kawecki bears emphasis here. In that case, as in this one, the plaintiff's § 1983 claims rested principally (if not solely) upon the theory that the defendants had deprived a conservatorship of its assets without due process of law. Under these circumstances, this Court opined that the plaintiff's federal due process claim might not be ripe, "so long as a claim of surcharge is still available — and, in fact, still pending — before the state court." Kawecki, 367 F. Supp.2d at 1147. Accordingly, the Court reasoned that Younger abstention was particularly appropriate, where the plaintiff "not only has an adequate opportunity to seek relief in the state court, but he seemingly *must* do so before pursuing his federal due process claim in this Court." 367 F. Supp.2d at 1147-48. Similarly, in the present case, the Court is unwilling to enjoin a state court proceeding that potentially could provide the very due process that Plaintiff complains is lacking — or, at a minimum, might restore some or all of the assets that allegedly were misappropriated from Mr. Schwartzkopf's estate.

---

advances much the same argument here, also citing Mitchum in support. This contention obviously has not prevailed in this Circuit, however.

For these reasons,

NOW, THEREFORE, IT IS HEREBY ORDERED that Plaintiff's July 31, 2006

Emergency Motion to Stay Proceedings in Macomb County Probate Court is DENIED.


s/Gerald E. Rosen
Gerald E. Rosen
United States District Judge

Dated:  September 12, 2006

I hereby certify that a copy of the foregoing document was served upon counsel of record
on September 12, 2006, by electronic and/or ordinary mail.

s/LaShawn R. Saulsberry
Case Manager

10

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

TED BIRKHOLZ, Personal Representative
of the Estate of HELEN ALTON, *et al.,*

       Plaintiffs,

                              Case No. 05-73498
v.                            Hon. Gerald E. Rosen

COUNTY OF MACOMB, *et al.,*

       Defendants.

_____/

**ORDER DENYING PLAINTIFF'S EMERGENCY**
**MOTION TO STAY STATE COURT PROCEEDINGS**

At a session of said Court, held in
the U.S. Courthouse, Detroit, Michigan
on       September 12, 2006      

PRESENT:  Honorable Gerald E. Rosen
                  United States District Judge

By motion filed on July 31, 2006, Plaintiff Cindy Schwartzkopf, the personal representative of the estate of Jacob Schwartzkopf, requests that this Court enjoin a forthcoming proceeding in the state court case of *In re Jacob Schwartzkopf,* Case No. 02-173,919-CA.  Specifically, a trial is scheduled to commence in the Macomb County Probate Court on September 12, 2006, at which the state court will address certain objections filed by Plaintiff to a petition seeking the entry of an order closing the investigation of the Macomb County Department of Senior Citizen Services

("MCDSCS")[1] and releasing any and all claims that the successor conservator of the estate of Jacob Schwartzkopf may have against Macomb County or its agents concerning the handling of estate assets. In support of the present motion, Plaintiff argues that a stay of this state court trial is warranted in order to ensure that her federal constitutional claims are not litigated in the Macomb County Probate Court, thereby extinguishing a purported "constitutional right," (Plaintiff's Motion, Br. in Support at 7), to have these claims addressed in the preferred forum of the federal district court.

The Supreme Court has repeatedly explained, however, that no such right exists. In Allen v. McCurry, 449 U.S. 90, 101 S. Ct. 411 (1980), for example, plaintiff Willie McCurry brought a federal suit under 42 U.S.C. § 1983, alleging that the defendant police officers violated his Fourth Amendment protection against unreasonable searches and seizures. Prior to this federal suit, McCurry had been a defendant in state court criminal proceedings, and had raised essentially the same Fourth Amendment challenge in a pretrial motion to suppress. The state court denied this motion in part, and McCurry subsequently was convicted after a jury trial. In the ensuing federal § 1983 action, the district court held that McCurry was precluded by collateral estoppel principles from relitigating the search-and-seizure issues decided against him in the state court criminal proceedings. The court of appeals reversed this ruling and remanded the case for trial, "invoking the special role of the federal courts in protecting civil rights" and reasoning

---

[1]The MCDSCS has been named as one of the defendants in the present federal court suit.

"that the § 1983 suit was McCurry's only route to a federal forum for his constitutional claim."  <u>Allen</u>, 449 U.S. at 93-94, 101 S. Ct. at 414 (internal quotation marks and citation omitted).

The Supreme Court reversed, holding that the doctrine of collateral estoppel is applicable to § 1983 suits.  In so ruling, the Court stated:

> The actual basis of the Court of Appeals' holding appears to be a generally framed principle that every person asserting a federal right is entitled to one unencumbered opportunity to litigate that right in a federal district court, regardless of the legal posture in which the federal claim arises.  But the authority for this principle is difficult to discern.  It cannot lie in the Constitution, which makes no such guarantee, but leaves the scope of the jurisdiction of the federal district courts to the wisdom of Congress.  And no such authority is to be found in § 1983 itself.  For reasons already discussed at length, nothing in the language or legislative history of § 1983 proves any congressional intent to deny binding effect to a state-court judgment or decision when the state court, acting within its proper jurisdiction, has given the parties a full and fair opportunity to litigate federal claims, and thereby has shown itself willing and able to protect federal rights . . . .  There is, in short, no reason to believe that Congress intended to provide a person claiming a federal right an unrestricted opportunity to relitigate an issue already decided in state court simply because the issue arose in a state proceeding in which he would rather not have been engaged at all.

449 U.S. at 103-04, 101 S. Ct. at 419-20 (footnotes omitted).  The Court further observed that any "general distrust of the capacity of the state courts to render correct decisions on constitutional issues" could not be reconciled with the Court's "emphatic reaffirmation" in an earlier case "of the constitutional obligation of the state courts to uphold federal law, and its expression of confidence in their ability to do so."  449 U.S. at 105, 101 S. Ct. at 420 (citations omitted).

The Supreme Court has reiterated these points in two more recent decisions.  First, in Migra v. Warren City School District Board of Education, 465 U.S. 75, 104 S. Ct. 892 (1984), the Court held that the ruling in Allen extended to the doctrine of res judicata (or claim preclusion), and not just collateral estoppel (or issue preclusion).  After finding no apparent basis to distinguish between the issue-preclusive and claim-preclusive effect of state court judgments in § 1983 suits, the Court then rejected one posited benefit to drawing such a distinction:

> Petitioner suggests that to give state-court judgments full issue preclusive effect but not claim preclusive effect would enable litigants to bring their state claims in state court and their federal claims in federal court, thereby taking advantage of the relative expertise of both forums. Although such a division may seem attractive from a plaintiff's perspective, it is not the system established by [the full faith and credit statute, 28 U.S.C.] § 1738.  That statute embodies the view that it is more important to give full faith and credit to state-court judgments than to ensure separate forums for federal and state claims.  This reflects a variety of concerns, including notions of comity, the need to prevent vexatious litigation, and a desire to conserve judicial resources.

Migra, 465 U.S. at 84, 104 S. Ct. at 898.  Thus, the Court reaffirmed that "[s]ection 1983 . . . does not override state preclusion law and guarantee petitioner a right to proceed to judgment in state court on her state claims and then turn to federal court for adjudication of her federal claims."  465 U.S. at 85, 104 S. Ct. at 898.

Most recently, in San Remo Hotel, L.P. v. City of San Francisco, 125 S. Ct. 2491, 2495 (2005), the Court addressed the contention that principles of preclusion should not apply where a plaintiff is compelled to seek adequate compensation in state court before pursuing a Fifth Amendment takings claim in federal court.  In confirming that litigants

4

are bound by the usual preclusion principles in this context, the Court again rejected the

premise "that plaintiffs have a right to vindicate their federal claims in a federal forum:"

> We have repeatedly held, to the contrary, that issues actually decided in valid state-court judgments may well deprive plaintiffs of the "right" to have their federal claims relitigated in federal court. *See, e.g., Migra v. Warren City School Dist. Bd. of Ed.,* 465 U.S. 75, 84, 104 S.Ct. 892, 79 L.Ed.2d 56 (1984); *Allen,* 449 U.S., at 103-104, 101 S.Ct. 411. This is so even when the plaintiff would have preferred not to litigate in state court, but was required to do so by statute or prudential rules. See *id.,* at 104, 101 S.Ct. 411. The relevant question in such cases is not whether the plaintiff has been afforded access to a federal forum; rather, the question is whether the state court actually decided an issue of fact or law that was necessary to its judgment.
>
> * * * *
>
> As in *Allen,* we are presently concerned only with issues *actually decided* by the state court that are dispositive of federal claims raised under § 1983. And, also as in *Allen,* it is clear that petitioners would have preferred not to have been forced to have their federal claims resolved by issues decided in state court. Unfortunately for petitioners, it is entirely *unclear* why their preference for a federal forum should matter for constitutional or statutory purposes.
>
> * * * *
>
> At base, petitioners' claim amounts to little more than the concern that it is unfair to give preclusive effect to state-court proceedings that are not chosen, but are instead *required* in order to ripen federal takings claims. Whatever the merits of that concern may be, we are not free to disregard the full faith and credit statute solely to preserve the availability of a federal forum.

San Remo Hotel, 125 S. Ct. at 2504-07.

In light of these precedents, Plaintiff cannot plausibly claim that the Court must

enjoin the pending state court proceeding in order to safeguard any purported "right" to

have her federal § 1983 claims heard and decided in a federal forum.  As is evident from

Allen, Migra, and San Remo Hotel, if the state court proceeding is permitted to go

forward, the parties will be free to return to this Court at its conclusion and argue that

matters decided in the state court should be given issue- or claim-preclusive effect in this

action.  If this, in turn, results in Plaintiff's federal claims being adversely affected, or

even outright precluded, it is clear from the above-cited decisions that no "right" to a

federal forum would be thereby transgressed.  Thus, while Plaintiff points to various

claimed sources of this Court's general  authority to enjoin a state court proceeding in the

proper circumstances — an authority which, it should be noted, is sharply circumscribed,

see 28 U.S.C. § 2283 (prohibiting a federal court from "grant[ing] an injunction to stay

proceedings in a State court," subject to three limited exceptions); see also Great Earth

Companies, Inc. v. Simons, 288 F.3d 878, 894 (6th Cir. 2002) (noting that the statute's

three enumerated exceptions "are narrow in their application and should not be enlarged

by loose statutory construction" (internal quotation marks and citations omitted)) — she

has failed to identify a recognized ground for exercising this power here.

    Moreover, the injunction sought by Plaintiff would be entirely antithetical to the

abstention principles recently invoked by this Court in the companion case of Kawecki v.

County of Macomb, No. 04-70907.  There, as here, the plaintiff alleged that the

Defendant County, the MCDSCS, and certain current and former MCDSCS employees

mismanaged a conservatorship established through the Macomb County Probate Court.

In an April 29, 2005 decision, the Court elected to stay the case pending the outcome of

6

the related state probate court proceedings in which a court-appointed special fiduciary was investigating similar allegations of mismanagement.  See Kawecki v. County of Macomb, 367 F. Supp.2d 1137 (E.D. Mich. 2005).  This stay was premised principally on the doctrine of Younger abstention.  See Kawecki, 367 F. Supp.2d at 1144-48.

In so ruling, this Court addressed two points that bear directly on the relief sought here.  First, the Court found that the case satisfied the Younger abstention requirement that the parallel state court proceeding must "afford[] the plaintiff an adequate opportunity to raise constitutional claims."  Kawecki, 367 F. Supp.2d at 1144 (quoting Carroll v. City of Mount Clemens, 139 F.3d 1072, 1074 (6th Cir. 1998)).[2]  Plainly, then,

---

[2]Notably, the plaintiff in Kawecki vigorously disputed this point, arguing, albeit without citation to any supporting authority, that the Michigan probate courts lack the authority to address federal constitutional claims.  See Kawecki, 367 F. Supp.2d at 1146.  The plaintiff also denied that she was a party to the state court proceeding, such that she could pursue her interests in that forum.  See Kawecki, 367 F. Supp. at 1144.  Yet, as Defendants point out in their response to the present motion, Plaintiff here — whose claims and allegations are similar to those presented in Kawecki, and who is represented by the very same counsel — now expresses the concern that she will be "forced to litigate Mr. Schwartzkopf's constitutional claims in Macomb Probate Court," with the result that "**the doctrine of *res judicata* will bar those claims from being litigated in the federal court proceedings.**"  (Plaintiff's Motion, Br. in Support at 7 (emphasis in original).)

Under Michigan law, the doctrine of *res judicata* applies only to claims (i) that were actually litigated in a prior suit, or (ii) that arise from the "same transaction" as claims actually litigated and that "the parties, exercising reasonable diligence, could have raised but did not."  Adair v. State of Michigan, 470 Mich. 105, 680 N.W.2d 386, 396 (2004).  Apparently, then, Plaintiff has acknowledged the possibility that her federal claims might be addressed in the probate court proceedings, because the doctrine of *res judicata* otherwise would not prevent these claims from being litigated in this Court.  Similarly, *res judicata* would not be triggered unless Plaintiff was either a party to the state court proceedings or in privity with such a party, see Adair, 680 N.W.2d at 396 — a prerequisite that the plaintiffs here and in Kawecki have previously denied is satisfied.  As Defendants rightly observe, then, there is an inherent tension between Plaintiff's appeal to *res judicata* concerns in her present motion and the contentions previously advanced by the plaintiffs and their counsel in this case and Kawecki.

7

the Court was aware of the possibility that the state court might well address issues bearing upon the plaintiff's federal § 1983 claims. Indeed, the Court opined that it was likely that "the same factual issues would be litigated in either the state or the federal proceeding," and that the plaintiff possibly "could be made whole for any loss of funds in the state court proceeding." Kawecki, 367 F. Supp.2d at 1147. Yet, despite this evident overlap, and despite the potentially preclusive or mooting effect of the state court litigation, this Court not only did not enjoin the state court proceedings, but ***stayed*** the ***federal court proceedings*** to allow these parallel state proceedings to run their course.

Kawecki is not at all unusual in this regard. Rather, in cases where Younger abstention is appropriate, the parallel state proceeding often has a preclusive effect upon the stayed federal suit, or at least tends to streamline the federal claims that remain viable at the conclusion of the state proceeding.[3] In Carroll, 139 F.3d at 1075, for example, the Sixth Circuit observed that the district court in that case likely would "have nothing left to do but clear the case number off of its docket once the state proceedings conclude," because of the potential *res judicata* effects of the various possible outcomes of the state proceeding.[4] More generally, the Sixth Circuit has noted that "in *Younger* abstention

---

[3]Indeed, this is one of the salutary effects of Younger abstention, which is intended in part to "avoid a duplication of legal proceedings and legal sanctions where a single suit would be adequate." Carroll, 139 F.3d at 1075 (internal quotation marks and citation omitted).

[4]Notably, the dissenting judge in Carroll protested that the majority's application of Younger abstention in that case would "deprive the . . . federal court plaintiff of a federal forum in which to litigate her federal constitutional claim," a result that the dissenter viewed as contrary to the Supreme Court's decision in Mitchum v. Foster, 407 U.S. 225, 92 S. Ct. 2151 (1972). Carroll, 139 F.3d at 1078 (Moore, J., concurring in part and dissenting in part). Plaintiff

8

cases, the parties will almost always be barred by *res judicata* from relitigating in federal court." Bates v. Van Buren Township, 122 Fed. Appx. 803, 809 n.2 (6th Cir. Dec. 6, 2004). The very existence and availability of Younger abstention, then, defeats Plaintiff's contention that it is proper to enjoin a state court proceeding for the sole purpose of avoiding an outcome that might have an issue- or claim-preclusive effect upon a parallel federal suit.

One other point from Kawecki bears emphasis here. In that case, as in this one, the plaintiff's § 1983 claims rested principally (if not solely) upon the theory that the defendants had deprived a conservatorship of its assets without due process of law. Under these circumstances, this Court opined that the plaintiff's federal due process claim might not be ripe, "so long as a claim of surcharge is still available — and, in fact, still pending — before the state court." Kawecki, 367 F. Supp.2d at 1147. Accordingly, the Court reasoned that Younger abstention was particularly appropriate, where the plaintiff "not only has an adequate opportunity to seek relief in the state court, but he seemingly *must* do so before pursuing his federal due process claim in this Court." 367 F. Supp.2d at 1147-48. Similarly, in the present case, the Court is unwilling to enjoin a state court proceeding that potentially could provide the very due process that Plaintiff complains is lacking — or, at a minimum, might restore some or all of the assets that allegedly were misappropriated from Mr. Schwartzkopf's estate.

---

advances much the same argument here, also citing Mitchum in support. This contention obviously has not prevailed in this Circuit, however.

9

For these reasons,

NOW, THEREFORE, IT IS HEREBY ORDERED that Plaintiff's July 31, 2006

Emergency Motion to Stay Proceedings in Macomb County Probate Court is DENIED.


s/Gerald E. Rosen
Gerald E. Rosen
United States District Judge

Dated:  September 12, 2006

I hereby certify that a copy of the foregoing document was served upon counsel of record on September 12, 2006, by electronic and/or ordinary mail.

s/LaShawn R. Saulsberry
Case Manager

10

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

TED BIRKHOLZ, Personal Representative
of the Estate of HELEN ALTON, *et al.,*

       Plaintiffs,

                                Case No. 05-73498

v.                                 Hon. Gerald E. Rosen

COUNTY OF MACOMB, *et al.,*

       Defendants.

_____/

**ORDER DENYING PLAINTIFF'S EMERGENCY**
**MOTION TO STAY STATE COURT PROCEEDINGS**

At a session of said Court, held in
the U.S. Courthouse, Detroit, Michigan
on      September 12, 2006

PRESENT:  Honorable Gerald E. Rosen
                 United States District Judge

By motion filed on July 31, 2006, Plaintiff Cindy Schwartzkopf, the personal

representative of the estate of Jacob Schwartzkopf, requests that this Court enjoin a

forthcoming proceeding in the state court case of *In re Jacob Schwartzkopf,* Case No. 02-

173,919-CA.  Specifically, a trial is scheduled to commence in the Macomb County

Probate Court on September 12, 2006, at which the state court will address certain

objections filed by Plaintiff to a petition seeking the entry of an order closing the

investigation of the Macomb County Department of Senior Citizen Services

("MCDSCS")[1] and releasing any and all claims that the successor conservator of the estate of Jacob Schwartzkopf may have against Macomb County or its agents concerning the handling of estate assets. In support of the present motion, Plaintiff argues that a stay of this state court trial is warranted in order to ensure that her federal constitutional claims are not litigated in the Macomb County Probate Court, thereby extinguishing a purported "constitutional right," (Plaintiff's Motion, Br. in Support at 7), to have these claims addressed in the preferred forum of the federal district court.

The Supreme Court has repeatedly explained, however, that no such right exists. In Allen v. McCurry, 449 U.S. 90, 101 S. Ct. 411 (1980), for example, plaintiff Willie McCurry brought a federal suit under 42 U.S.C. § 1983, alleging that the defendant police officers violated his Fourth Amendment protection against unreasonable searches and seizures. Prior to this federal suit, McCurry had been a defendant in state court criminal proceedings, and had raised essentially the same Fourth Amendment challenge in a pretrial motion to suppress. The state court denied this motion in part, and McCurry subsequently was convicted after a jury trial. In the ensuing federal § 1983 action, the district court held that McCurry was precluded by collateral estoppel principles from relitigating the search-and-seizure issues decided against him in the state court criminal proceedings. The court of appeals reversed this ruling and remanded the case for trial, "invoking the special role of the federal courts in protecting civil rights" and reasoning

---

[1]The MCDSCS has been named as one of the defendants in the present federal court suit.

2

"that the § 1983 suit was McCurry's only route to a federal forum for his constitutional claim."  Allen, 449 U.S. at 93-94, 101 S. Ct. at 414 (internal quotation marks and citation omitted).

The Supreme Court reversed, holding that the doctrine of collateral estoppel is applicable to § 1983 suits.  In so ruling, the Court stated:

> The actual basis of the Court of Appeals' holding appears to be a generally framed principle that every person asserting a federal right is entitled to one unencumbered opportunity to litigate that right in a federal district court, regardless of the legal posture in which the federal claim arises.  But the authority for this principle is difficult to discern.  It cannot lie in the Constitution, which makes no such guarantee, but leaves the scope of the jurisdiction of the federal district courts to the wisdom of Congress.  And no such authority is to be found in § 1983 itself.  For reasons already discussed at length, nothing in the language or legislative history of § 1983 proves any congressional intent to deny binding effect to a state-court judgment or decision when the state court, acting within its proper jurisdiction, has given the parties a full and fair opportunity to litigate federal claims, and thereby has shown itself willing and able to protect federal rights . . . .  There is, in short, no reason to believe that Congress intended to provide a person claiming a federal right an unrestricted opportunity to relitigate an issue already decided in state court simply because the issue arose in a state proceeding in which he would rather not have been engaged at all.

449 U.S. at 103-04, 101 S. Ct. at 419-20 (footnotes omitted).  The Court further observed that any "general distrust of the capacity of the state courts to render correct decisions on constitutional issues" could not be reconciled with the Court's "emphatic reaffirmation" in an earlier case "of the constitutional obligation of the state courts to uphold federal law, and its expression of confidence in their ability to do so."  449 U.S. at 105, 101 S. Ct. at 420 (citations omitted).

3

The Supreme Court has reiterated these points in two more recent decisions.  First, in Migra v. Warren City School District Board of Education, 465 U.S. 75, 104 S. Ct. 892 (1984), the Court held that the ruling in Allen extended to the doctrine of res judicata (or claim preclusion), and not just collateral estoppel (or issue preclusion).  After finding no apparent basis to distinguish between the issue-preclusive and claim-preclusive effect of state court judgments in § 1983 suits, the Court then rejected one posited benefit to drawing such a distinction:

> Petitioner suggests that to give state-court judgments full issue preclusive effect but not claim preclusive effect would enable litigants to bring their state claims in state court and their federal claims in federal court, thereby taking advantage of the relative expertise of both forums. Although such a division may seem attractive from a plaintiff's perspective, it is not the system established by [the full faith and credit statute, 28 U.S.C.] § 1738.  That statute embodies the view that it is more important to give full faith and credit to state-court judgments than to ensure separate forums for federal and state claims.  This reflects a variety of concerns, including notions of comity, the need to prevent vexatious litigation, and a desire to conserve judicial resources.

Migra, 465 U.S. at 84, 104 S. Ct. at 898.  Thus, the Court reaffirmed that "[s]ection 1983 . . . does not override state preclusion law and guarantee petitioner a right to proceed to judgment in state court on her state claims and then turn to federal court for adjudication of her federal claims."  465 U.S. at 85, 104 S. Ct. at 898.

Most recently, in San Remo Hotel, L.P. v. City of San Francisco, 125 S. Ct. 2491, 2495 (2005), the Court addressed the contention that principles of preclusion should not apply where a plaintiff is compelled to seek adequate compensation in state court before pursuing a Fifth Amendment takings claim in federal court.  In confirming that litigants

4

are bound by the usual preclusion principles in this context, the Court again rejected the

premise "that plaintiffs have a right to vindicate their federal claims in a federal forum:"

> We have repeatedly held, to the contrary, that issues actually decided in valid state-court judgments may well deprive plaintiffs of the "right" to have their federal claims relitigated in federal court. *See, e.g., Migra v. Warren City School Dist. Bd. of Ed.,* 465 U.S. 75, 84, 104 S.Ct. 892, 79 L.Ed.2d 56 (1984); *Allen,* 449 U.S., at 103-104, 101 S.Ct. 411. This is so even when the plaintiff would have preferred not to litigate in state court, but was required to do so by statute or prudential rules. See *id.,* at 104, 101 S.Ct. 411. The relevant question in such cases is not whether the plaintiff has been afforded access to a federal forum; rather, the question is whether the state court actually decided an issue of fact or law that was necessary to its judgment.

> * * * *

> As in *Allen,* we are presently concerned only with issues *actually decided* by the state court that are dispositive of federal claims raised under § 1983. And, also as in *Allen,* it is clear that petitioners would have preferred not to have been forced to have their federal claims resolved by issues decided in state court. Unfortunately for petitioners, it is entirely *unclear* why their preference for a federal forum should matter for constitutional or statutory purposes.

> * * * *

> At base, petitioners' claim amounts to little more than the concern that it is unfair to give preclusive effect to state-court proceedings that are not chosen, but are instead *required* in order to ripen federal takings claims. Whatever the merits of that concern may be, we are not free to disregard the full faith and credit statute solely to preserve the availability of a federal forum.

San Remo Hotel, 125 S. Ct. at 2504-07.

In light of these precedents, Plaintiff cannot plausibly claim that the Court must

enjoin the pending state court proceeding in order to safeguard any purported "right" to

have her federal § 1983 claims heard and decided in a federal forum.  As is evident from

Allen, Migra, and San Remo Hotel, if the state court proceeding is permitted to go

forward, the parties will be free to return to this Court at its conclusion and argue that

matters decided in the state court should be given issue- or claim-preclusive effect in this

action.  If this, in turn, results in Plaintiff's federal claims being adversely affected, or

even outright precluded, it is clear from the above-cited decisions that no "right" to a

federal forum would be thereby transgressed.  Thus, while Plaintiff points to various

claimed sources of this Court's general  authority to enjoin a state court proceeding in the

proper circumstances — an authority which, it should be noted, is sharply circumscribed,

see 28 U.S.C. § 2283 (prohibiting a federal court from "grant[ing] an injunction to stay

proceedings in a State court," subject to three limited exceptions); see also Great Earth

Companies, Inc. v. Simons, 288 F.3d 878, 894 (6th Cir. 2002) (noting that the statute's

three enumerated exceptions "are narrow in their application and should not be enlarged

by loose statutory construction" (internal quotation marks and citations omitted)) — she

has failed to identify a recognized ground for exercising this power here.

     Moreover, the injunction sought by Plaintiff would be entirely antithetical to the

abstention principles recently invoked by this Court in the companion case of Kawecki v.

County of Macomb, No. 04-70907.  There, as here, the plaintiff alleged that the

Defendant County, the MCDSCS, and certain current and former MCDSCS employees

mismanaged a conservatorship established through the Macomb County Probate Court.

In an April 29, 2005 decision, the Court elected to stay the case pending the outcome of

2:05-cv-73498-GER-WC   Doc # 24   Filed 09/12/06   Pg 27 of 30   Pg ID 869

the related state probate court proceedings in which a court-appointed special fiduciary

was investigating similar allegations of mismanagement.  See Kawecki v. County of

Macomb, 367 F. Supp.2d 1137 (E.D. Mich. 2005).  This stay was premised principally on

the doctrine of Younger abstention.  See Kawecki, 367 F. Supp.2d at 1144-48.

In so ruling, this Court addressed two points that bear directly on the relief sought

here.  First, the Court found that the case satisfied the Younger abstention requirement

that the parallel state court proceeding must "afford[] the plaintiff an adequate

opportunity to raise constitutional claims."  Kawecki, 367 F. Supp.2d at 1144 (quoting

Carroll v. City of Mount Clemens, 139 F.3d 1072, 1074 (6th Cir. 1998)).[2]  Plainly, then,

---

[2]Notably, the plaintiff in Kawecki vigorously disputed this point, arguing, albeit without
citation to any supporting authority, that the Michigan probate courts lack the authority to
address federal constitutional claims.  See Kawecki, 367 F. Supp.2d at 1146.  The plaintiff also
denied that she was a party to the state court proceeding, such that she could pursue her interests
in that forum.  See Kawecki, 367 F. Supp. at 1144.  Yet, as Defendants point out in their
response to the present motion, Plaintiff here — whose claims and allegations are similar to
those presented in Kawecki, and who is represented by the very same counsel — now expresses
the concern that she will be "forced to litigate Mr. Schwartzkopf's constitutional claims in
Macomb Probate Court," with the result that "**the doctrine of *res judicata* will bar those claims
from being litigated in the federal court proceedings.**"  (Plaintiff's Motion, Br. in Support at 7
(emphasis in original).)

Under Michigan law, the doctrine of *res judicata* applies only to claims (i) that were
actually litigated in a prior suit, or (ii) that arise from the "same transaction" as claims actually
litigated and that "the parties, exercising reasonable diligence, could have raised but did not."
Adair v. State of Michigan, 470 Mich. 105, 680 N.W.2d 386, 396 (2004).  Apparently, then,
Plaintiff has acknowledged the possibility that her federal claims might be addressed in the
probate court proceedings, because the doctrine of *res judicata* otherwise would not prevent
these claims from being litigated in this Court.  Similarly, *res judicata* would not be triggered
unless Plaintiff was either a party to the state court proceedings or in privity with such a party,
see Adair, 680 N.W.2d at 396 — a prerequisite that the plaintiffs here and in Kawecki have
previously denied is satisfied.  As Defendants rightly observe, then, there is an inherent tension
between Plaintiff's appeal to *res judicata* concerns in her present motion and the contentions
previously advanced by the plaintiffs and their counsel in this case and Kawecki.

7

the Court was aware of the possibility that the state court might well address issues bearing upon the plaintiff's federal § 1983 claims. Indeed, the Court opined that it was likely that "the same factual issues would be litigated in either the state or the federal proceeding," and that the plaintiff possibly "could be made whole for any loss of funds in the state court proceeding." <u>Kawecki</u>, 367 F. Supp.2d at 1147. Yet, despite this evident overlap, and despite the potentially preclusive or mooting effect of the state court litigation, this Court not only did not enjoin the state court proceedings, but ***stayed*** the ***federal court proceedings*** to allow these parallel state proceedings to run their course.

<u>Kawecki</u> is not at all unusual in this regard. Rather, in cases where <u>Younger</u> abstention is appropriate, the parallel state proceeding often has a preclusive effect upon the stayed federal suit, or at least tends to streamline the federal claims that remain viable at the conclusion of the state proceeding.[3] In <u>Carroll</u>, 139 F.3d at 1075, for example, the Sixth Circuit observed that the district court in that case likely would "have nothing left to do but clear the case number off of its docket once the state proceedings conclude," because of the potential *res judicata* effects of the various possible outcomes of the state proceeding.[4] More generally, the Sixth Circuit has noted that "in *Younger* abstention

---

[3]Indeed, this is one of the salutary effects of <u>Younger</u> abstention, which is intended in part to "avoid a duplication of legal proceedings and legal sanctions where a single suit would be adequate." <u>Carroll</u>, 139 F.3d at 1075 (internal quotation marks and citation omitted).

[4]Notably, the dissenting judge in <u>Carroll</u> protested that the majority's application of <u>Younger</u> abstention in that case would "deprive the . . . federal court plaintiff of a federal forum in which to litigate her federal constitutional claim," a result that the dissenter viewed as contrary to the Supreme Court's decision in <u>Mitchum v. Foster</u>, 407 U.S. 225, 92 S. Ct. 2151 (1972). <u>Carroll</u>, 139 F.3d at 1078 (Moore, J., concurring in part and dissenting in part). Plaintiff

8

cases, the parties will almost always be barred by *res judicata* from relitigating in federal court." Bates v. Van Buren Township, 122 Fed. Appx. 803, 809 n.2 (6th Cir. Dec. 6, 2004). The very existence and availability of Younger abstention, then, defeats Plaintiff's contention that it is proper to enjoin a state court proceeding for the sole purpose of avoiding an outcome that might have an issue- or claim-preclusive effect upon a parallel federal suit.

One other point from Kawecki bears emphasis here. In that case, as in this one, the plaintiff's § 1983 claims rested principally (if not solely) upon the theory that the defendants had deprived a conservatorship of its assets without due process of law. Under these circumstances, this Court opined that the plaintiff's federal due process claim might not be ripe, "so long as a claim of surcharge is still available — and, in fact, still pending — before the state court." Kawecki, 367 F. Supp.2d at 1147. Accordingly, the Court reasoned that Younger abstention was particularly appropriate, where the plaintiff "not only has an adequate opportunity to seek relief in the state court, but he seemingly *must* do so before pursuing his federal due process claim in this Court." 367 F. Supp.2d at 1147-48. Similarly, in the present case, the Court is unwilling to enjoin a state court proceeding that potentially could provide the very due process that Plaintiff complains is lacking — or, at a minimum, might restore some or all of the assets that allegedly were misappropriated from Mr. Schwartzkopf's estate.

---

advances much the same argument here, also citing Mitchum in support. This contention obviously has not prevailed in this Circuit, however.

For these reasons,

NOW, THEREFORE, IT IS HEREBY ORDERED that Plaintiff's July 31, 2006

Emergency Motion to Stay Proceedings in Macomb County Probate Court is DENIED.


s/Gerald E. Rosen
Gerald E. Rosen
United States District Judge

Dated:  September 12, 2006

I hereby certify that a copy of the foregoing document was served upon counsel of record on September 12, 2006, by electronic and/or ordinary mail.

s/LaShawn R. Saulsberry
Case Manager

10